**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JORGE MARTINEZ** and **MELISSA MARTINEZ**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**CONTACTPOINT360, LLC,**<br><br>Defendant. | Case No.:<br><br>Hon. |

**COLLECTIVE ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs Jorge Martinez and Melissa Martinez, individually and on behalf of all others similarly situated (hereinafter, "Plaintiffs"), by and through their attorneys, hereby bring this Collective Action Complaint against ContactPoint360, LLC ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2. Defendant ContactPoint360 is a global business-process outsourcing and customer-experience firm that provides customer service, technical support, sales, and back-office operations for companies across many industries.[1] It delivers these services through omnichannel contact centers and tech-enabled CX solutions, including AI, analytics, and multilingual support. *Id.*

[1] *See* https://contactpoint360.com/cx-services/ (last visited May 26, 2026).

3. In providing the aforementioned services, Defendant employed hourly call center employees with job titles that include, but are not limited to, Customer Service Representative, Customer Success Representative, Liberty Agent, Sales Development Representative, and/or other job titles performing the same or similar job duties (collectively referred to as "CSRs"), in brick-and-mortar call centers and in remote call center settings across the United States. Defendant heavily relied on non-exempt CSRs to, among other things, act as the primary contact for Defendant's customers, assist them with inquiries and concerns, and provide exceptional support. *See* Job Posting, attached hereto as Exhibit A.

4. Regardless of the specific job title, or specific account, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing assistance to Defendant's customers.

5. The United States Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited May 26, 2026) (attached hereto as Exhibit B).

6. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day

for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

7. Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for all hours worked, including off-the-clock work performed before and after scheduled shifts when employees were not logged into Defendant's timekeeping system. As a result of these unlawful timekeeping procedures, CSRs were not paid for all overtime hours worked.

8. More specifically, Defendant failed to compensate CSRs for the substantial off-the-clock time they spent turning on and booting up their computers and necessary programs before clocking into Defendant's timekeeping system, and shutting down those programs and applications after clocking out.

9. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees, and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

10. At the earliest time possible, Plaintiffs will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

12. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13. Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

14. This Court has personal jurisdiction over Defendant because Defendant conducts business within the State of Texas, employs individuals within the state of Texas, is registered with the Texas Secretary of State, and maintains its principal place of business in the United States in the State of Texas.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District, and a substantial portion of the events that give rise to Plaintiffs' clams occurred in this District.

## PARTIES

16. Plaintiff Jorge Martinez is a resident of Alamo, Texas. Plaintiff worked for Defendant in its Pharr, Texas call center as a Customer Service Representative from approximately September 2023 to February 2024. Plaintiff also worked remotely from home. Defendant compensated Plaintiff for his services as a CSR in the form of an hourly wage, most recently at the rate of $15.00 per hour. Plaintiff Martinez signed a Consent to Sue to join this collective action

lawsuit, attached hereto Exhibit C.

17. Plaintiff Melissa Martinez is a resident of Alamo, Texas. Plaintiff worked for Defendant in its Pharr, Texas call center as a Customer Service Representative in 2024 until approximately February 2025. Defendant compensated Plaintiff for her services as a CSR in the form of an hourly wage, most recently at the rate of $15.00 per hour. Plaintiff Martinez signed a Consent to Sue to join this collective action lawsuit, attached hereto Exhibit D.

18. Additional putative Collective members were or are employed by Defendant as CSRs during the past three (3) years and their Consent to Sue forms will also be filed in this case.

19. Defendant ContactPoint360, LLC is a Texas limited liability company (Taxpayer No. 32074614424) with its principal place of business in the United States in Pharr, Texas. Defendant maintains a registered agent for service of process listed as The Siddiqui Law Firm PLLC, 1235 North Loop West, Suite 810, Houston, Texas 77018.

## GENERAL ALLEGATIONS

20. Defendant maintained documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

21. Defendant employed Plaintiffs as hourly CSRs and assigned Plaintiffs to answer incoming calls, gathered information to open new accounts, and verified whether customer addresses fell within the company's service area. Plaintiffs utilized Defendant's applications and systems to track all customer service information. Plaintiffs additionally performed the required unpaid off-the-clock work explained below.

22. Defendant paid its CSRs at similar hourly rates.

23. Defendant's CSRs typically worked five (5) days each week and forty (40) hours per week.

24. Defendant provided training to CSRs, on, inter alia, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same, and Defendant's CSRs, including Plaintiffs, were subject to the same relevant policies and procedures.

25. At all relevant times, Defendant controlled Plaintiffs' and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

26. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CSRs, like Plaintiffs, not being paid for all hours worked, including the off-the-clock work described herein.

27. Defendant required Plaintiffs and all other CSRs to use one or more computers and essential and indispensable computer programs and applications in order to perform their job duties.

28. Defendant instructed Plaintiffs and other similarly situated CSRs to be call ready the moment their scheduled shift started. This required Defendant's CSRs to arrive to work early to load and log into essential work-related computer programs and applications before the start of their shifts and before they were allowed to clock in so they could be prepared to field calls the moment their shifts began. These programs included, but were not limited to, Citrix, CRM, softphone, virtual desktops, and VPN software.

29. During the boot-up and login process, Defendant's CSRs occasionally experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

30. Defendant enforced its call ready policy and required its CSRs to perform off-the-clock work through its uniform attendance, compensation, timekeeping, and schedule adherence procedures.

31. Defendant additionally maintained schedule attendance and adherence metrics pursuant to which it monitored the CSRs' clock-in times in relation to their start-of-shift time, as well as the time the CSRs went into a ready status. Thus, Defendant forced its CSRs to perform some, if not all, of the boot-up and login process before the start of their shifts and before they were allowed to clock in.

32. All of Defendant's CSRs used the same or similar computers, networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

33. Similarly, Defendant's CSRs, including Plaintiffs, performed work off-the-clock after their scheduled shifts and after clocking out of Defendant's timekeeping system when they closed the programs and applications that they utilized during their shifts.

34. At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

35. Over the course of his employment, Plaintiff Jorge Martinez complained to his supervisors regarding the pre-shift boot-up and login work activities he completed every day. Plaintiff's supervisors acknowledged the off-the-clock work and that it had to be performed prior to the start of his scheduled shifts.

36. The pre- and post-shift off-the-clock time Plaintiffs and all other CSRs spent

booting-up/logging into/shutting down their computers, applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

37. As a result of the off-the-clock work described herein, Plaintiffs and other CSRs were unlawfully deprived of approximately fifteen (15) to twenty (20) minutes of compensation every day.

38. At all relevant times, Defendant was able to track the amount of time Plaintiffs and other CSRs spent performing pre- and post-shift activities, as well as the work performed during their scheduled shifts. Nevertheless, Defendant failed to do so and failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed.

39. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

40. Despite knowing Plaintiffs and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

41. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs booted-up and logged into their computers each day, along with the time they logged into and out of the timekeeping system.

42. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and other CSRs experienced technical issues.

43. Because Defendant required its CSRs, including Plaintiffs, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours

reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

***A. Unpaid Boot-Up and Call Ready Work.***

44. To access Defendant's systems, Plaintiffs, and all other current and/or former CSRs, must turn on their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications. Once this boot-up and call ready work is completed, Plaintiffs must log in to Defendant's phone system to become call ready.

45. Defendant's CSRs had to complete this process *before*: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping program; and (3) fielding calls. Consequently, the CSRs had to arrive to work approximately ten (10) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

46. Defendant did not compensate Plaintiffs, and all other current and/or former CSRs, until they logged in to the phone to become call ready to begin receiving phone calls.

47. The boot-up and call ready work regularly takes up to approximately up to fifteen (15) minutes, or more if technical issues arise. Defendant did not compensate Plaintiffs for this time.

48. Regardless of how long the boot-up and call ready work takes, Defendant did not allow Plaintiffs, and all other current and/or former CSRs, to clock in before completing all of the boot-up and call ready work and becoming call ready by logging into the phone.

49. The boot-up and call ready work Plaintiffs and all other current and/or former CSRs completed before they begin being compensated is the same regardless of where they worked.

50. The boot-up and call ready procedure is integral and indispensable to the performance of Plaintiffs' principal job duties and integral and indispensable to Defendant's

business.

51. Thus, the unpaid boot-up and call ready work performed by Plaintiffs, and all other current and/or former CSRs, directly benefits Defendant.

***B. Post-Shift Off-the Clock Work***

52. Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs were required to clock out the moment their scheduled shifts concluded or when they finished fielding their last call for the shift and *before* closing the programs and applications they used during their scheduled shifts.

53. This resulted in Plaintiffs and other CSRs performing approximately five (5) minutes of uncompensated work per shift.

54. Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiffs, worked for Defendant's benefit.

55. The post-shift off-the-clock work Plaintiffs and other CSRs performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

***C. The Off-the-Clock Work Results in Viable "Gap Time" Claims.***

56. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*,

22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

57. Plaintiffs, and all other current and/or former CSRs, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

58. During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

***D. Defendant's Policy and Practice of Off-the-Clock Work Violates Federal Law.***

59. At all times relevant, Defendant suffered or permitted Plaintiffs, and all other current and/or former CSRs, to routinely perform off-the-clock boot-up and call ready work by not compensating its employees until after they completed the boot-up and call ready procedure, and the shutdown procedure at the end of their shift.

60. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8.

61. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former CSRs, for their compensable boot-up, shutdown, and call ready work performed in any amount.

62. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up, call ready, and shutdown work performed.

63. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former CSRs, for their boot-up, call ready, and shutdown work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

64. Defendant is aware of each and every workweek Plaintiffs was scheduled because Defendant's own payroll records reflect the number of hours it paid Plaintiffs.

65. Defendant is aware of Plaintiffs' regular hourly rate for each and every workweek Plaintiffs worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiffs. Plaintiffs' hourly rate was approximately $15.00 per hour.

66. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former hourly CSRs working for Defendant for their compensable boot-up, call ready, and shutdown work performed in workweeks totaling in excess of 40 hours at the proper rates, including overtime premiums.

67. In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiffs, and all other current and/or former CSRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all overtime performed by Plaintiffs, and all other current and/or former CSRs, in violation of the FLSA.

***D. Recordkeeping.***

68. 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

69. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

70. Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiffs as required by the FLSA.

71. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

72. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

**<u>COLLECTIVE ACTION ALLEGATIONS</u>**

73. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former hourly Customer Service Representatives, and/or other job titles performing the same or similar job duties, who work or have worked for ContactPoint360, LLC at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

74. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

75. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

76. Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

77. All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

78. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

79. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the FLSA Collective members, for all overtime and premium overtime wages for hours they worked off-the-clock; and

b. Willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective members, worked for the benefit of Defendant.

80. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

81. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

82. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members were (1) worked uncompensated boot-up and log-out time; and (2) entitled to overtime for hours worked over forty (40) in a week.

83. Plaintiffs estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

84. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## <u>RULE 23 CLASS ACTION ALLEGATIONS</u>

85. Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former hourly Customer Service Representatives, and/or other job titles performing the same or similar job duties, who work or have worked for ContactPoint360, LLC at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition if necessary.

86. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

87. There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following: whether Defendant's non-payment of wages for all compensable and non-overtime hours unjustly enriched Defendant.

88. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

89. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

90. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

91. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

92. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

93. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**
**(FLSA Collective)**

94. Plaintiffs re-alleges and incorporates all previous paragraphs herein.

95. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. §§ 201, *et seq*.

96. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

97. At all times relevant to this action, Plaintiffs and the FLSA Collective members

were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

98. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

99. Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

100. Plaintiffs either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

101. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

102. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

103. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiffs and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

104. The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

105. In workweeks where Plaintiffs and other FLSA Collective members worked forty

(40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage.

106. As a result of Defendant's unlawful policies and practices, Plaintiffs and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

107. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiffs and all putative FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

108. Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for all work activities, but did not.

109. Plaintiffs and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**

**(Rule 23 Class Action)**
**BREACH OF CONTRACT**

110. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

111. At all times relevant to this action, Defendant had binding and valid contracts with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on behalf of Defendant.

112. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant

made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiffs accepted and performed, but Defendant failed to perform by paying Plaintiffs and the Rule 23 Class the promised wages.

113. For example, Defendant offered to compensate Plaintiffs at a wage certain per hour if they agreed to perform services for Defendant as a CSR. Plaintiffs accepted Defendant's offer and performed their duties as a CSR in reliance on the offer.

114. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

115. Upon information and belief, each Rule 23 Class member, including Plaintiffs, was contractually entitled to varying minimum hourly rates within the applicable period.

116. Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

117. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

118. Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Class member.

119. Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate

in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure “gap time” claims for non-overtime hours/workweeks).

120. Plaintiffs’ and the Rule 23 Class members’ remedies under the FLSA are inadequate to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour and failed to compensate them for all hours worked, including (i) straight-time hours in workweeks where fewer than forty (40) hours were worked (i.e., “gap time”) and (ii) unpaid straight-time wages for hours worked up to and in excess of forty (40) hours in workweeks where Plaintiffs and the Rule 23 Class members worked overtime when considering the off-the-clock work described herein (i.e., “overtime gap time”).

121. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an “employer’s job.”

122. As a direct and proximate result of Defendant’s contractual breaches, Plaintiffs and the Rule 23 Class members were damaged in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

123. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

124. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

125. At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established hourly rate in consideration of the work duties they performed on behalf of Defendant.

126. Upon information and belief, each Rule 23 Class member, including Plaintiffs, were paid a base hourly rate.

127. Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out the work they performed.

128. By not paying Plaintiffs and every other Rule 23 Class member the promised base hourly wage for all the non-overtime work they performed each shift, Defendant was unjustly enriched.

129. Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

130. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

131. Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Class member to finance their various business expenditures.

132. Defendant was unjustly enriched by the retention of monies procured by Plaintiffs and the Rule 23 Class for Defendant, without having compensated Plaintiffs for the same.

133. Plaintiffs and the Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

134. As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Class member have suffered damages, including, but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation

c. An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts II and III)

d. An Order designating Plaintiffs as the representative of the FLSA Collective and undersigned counsel as class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; or in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiffs and the Rule 23 Class to perform

h. An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, and the FLSA Collective the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as required by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiffs, by and through their undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 11, 2026

Respectfully submitted,

______________________________

Kevin J. Stoops (P64371) & (CA Bar No. 332200)
Jacob R. Rusch (MN Bar No. 0391892)*
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
Ph: (248) 355-0300
Fax: (248) 746-4001
kstoops@sommerspc.com
jrusch@sommerspc.com

Alyson Steele Beridon (OH Bar No. 87496)*
**HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC**
600 Vine St., Ste 2720
Cincinnati, OH 45202
Ph: (513) 381-2224
Fax: (615) 994-8625
alyson@hsglawgroup.com

*Attorneys for Plaintiff and the Proposed Collective and Class*

**Pro Hac Vice Applications forthcoming*